UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 25-208-DLB

CARLOS GONZALEZ-ALBORNOZ                                                    PETITIONER

v.                  **MEMORANDUM OPINION AND ORDER**

SAMUEL OLSON, et al.,                                                          RESPONDENTS

\* \* \* \* \* \* \* \* \* \*

**I.    INTRODUCTION**

This matter is before the Court on Petitioner Carlos Gonzalez-Albornoz's Petition for Writ of Habeas Corpus (Doc. # 1).[1] Respondents[2] having filed their Responses (Docs. # 5 and 6), and Petitioner having filed his Reply (Doc. # 7), this matter is now ripe for review. For the reasons that follow, the Court will **grant** the Petition.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner Gonzalez-Albornoz is a national and citizen of Venezuela who has resided in the United States since approximately January 21, 2023. (Doc. # 1 ¶ 21). According to the Notice to Appear, dated January 21, 2023, Petitioner was paroled into

---

[1] Also pending is Petitioner's Unopposed Motion to Accept Tardy Filing (Doc. # 7). The Court **grants** that motion.

[2] Petitioner files this action against Samuel Olson, Acting Field Office Director of Enforcement and Removal Operations ("ERO"), Chicago Field Office, Immigration and Customs Enforcement ("ICE") and James A. Daley, Jailer, Campbell County Detention Center. Respondent Daley filed his Response, arguing that he is not Petitioner's legal or immediate custodian. (Doc. # 6). This is not disputed by Petitioner, and therefore, the Court will address only the Response filed by Respondent Samuel Olson. (*See* Doc. # 5).

1

the United States on that same date. (*Id.*). The Notice to Appear also classified Petitioner as an "arriving alien." (Doc. # 5-1).

On January 19, 2024, Petitioner filed an I-589 Application for Asylum with the Chicago Immigration Court. (Doc. # 1 ¶ 7). Petitioner's Merits Hearing was set for January 24, 2028, before Immigration Judge ("IJ") Kelly Johnson in the Memphis Immigration Court but was stricken given his detained status. (*Id.* ¶ 24). Petitioner additionally applied for and received his Employment Authorization Document ("EAD") through his I-589 application. (*Id.* at ¶ 25).

On October 2, 2025, using his EAD, Petitioner was working at a bakery when ICE agents detained him without a warrant. (*Id.* at ¶ 26). After DHS ordered Petitioner detained without bond, Petitioner filed for a bond redetermination on October 16, 2025. (Doc. # 5-2 at 1). On October 27, 2025, IJ Kelly Johnson denied his custody redetermination, stating that "the express language of 8 C.F.R. § 1003.19(h)(2)(i)(B) prohibits the Court from re-determining the custody status of an arriving alien in removal proceedings." (*Id.* at 2). On October 30, 2025, Petitioner filed a Motion to Suppress, arguing that his arrest was "unlawful and egregious[.]" (Doc. # 5-3 at 1). On December 1, 2025, the IJ denied the motion, finding that Petitioner had previously admitted the allegations contained in the Notice to Appear and conceded removability. (Doc. # 5-3) (Petitioner "cannot suppress an act connecting his identity with evidence already in the government's lawful possession.").

On November 5, 2025, Petitioner, through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1). Petitioner claims that his continued detention violates his Fourth and Fifth Amendment rights, as well as the

2

Immigration and Nationality Act ("INA").  Respondents filed their Responses (Docs. # 5 and 6) and Petitioner filed his Reply (Doc. # 8).

### III.   ANALYSIS

Petitioner concedes that as an arriving alien, he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).  (Doc. # 8 at 2).  Thus, unlike many recent habeas corpus petitions this Court has reviewed, Petitioner is not arguing that he is being improperly detained under 8 U.S.C. § 1225.  Rather, Petitioner states that the issue before this Court is "whether the detention here was lawful *ab inicio* [sic] and whether the Fourth and Fifth Amendment Procedural Due Process rights of the Petitioner were violated by the Respondents."  (*Id.*).

#### A.  Federal Pleading Standards

As a preliminary matter, the Court must first address Respondent's argument that Petitioner's "conclusory assertions do not satisfy federal pleading standards required to meet his burden of showing a non-speculative right to relief."  (Doc. # 5 at 5).  Specifically, Respondent argues that Petitioner's "failure to put forth any substantive legal argument as to why this Court should grant him habeas relief is sufficient reason alone to deny his petition."  (*Id.* at 6).

The Federal Rules of Civil Procedure require a pleading to contain a "short and plain statement of the claim showing the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Petitioner's habeas Petition clearly states that his detention violates "his right to substantive and procedural due process guarantee by the Fifth Amendment" and his "right against search and seizure guaranteed by the Fourth Amendment[.]"  (Doc. # 1 ¶ ¶ 33-34).  In his facts section, Petitioner alleges that he has been in detention for more than

two (2) months, is not a danger to the community nor a flight risk, has roots in his community, has been held without a bond hearing, and his attempt at a custody redetermination hearing were denied due to jurisdictional grounds. (*See* Doc. # 1). For those reasons, Petitioner states that "his detention is not justified under the Constitution or the Immigration and Nationality Act[.]" (*Id*. ¶ 8). Respondent states that the Court should "not have to guess at the nature of the claim asserted." (Doc. # 5 at 5) (quoting *Kafele v. Lerner, Sampson & Rothfuss*, 161 F. App'x 487, 491 (6th Cir. 2005)). The Court has done no guessing in this case. The Court clearly understands the nature of the claim—that Petitioner believes his initial apprehension without a warrant and his subsequent detention without a bond hearing violated, and continues to violate, his due process rights. Accordingly, because Petitioner's habeas Petition satisfies federal pleading standards, the Court will proceed to the merits.

### B. Due Process Rights

#### 1. Fourth Amendment

Petitioner alleges that his detention violates the right against unlawful search and seizure guaranteed by the Fourth Amendment. (Doc. # 1 ¶ 34). Petitioner alleges that he "was not the subject of any warrant, but was nonetheless detained without reasonable suspicion of criminality or probable cause." (*Id*. ¶ 26). Respondent states that "Section 1225(b)(2)(A) [] does not require a warrant." (Doc. # 5 at 8) (citing *Buriev v. Warden*, No. 25-cv-60459, 2025 WL 2763202, at *3 (S.D. Fla. Sept. 26, 2025)). Respondent additionally relies on the IJ's denial of Petitioner's motion to suppress noting that the IJ found "'nothing unreasonable or egregious about the officers' encounter with [Petitioner.]"). (*Id*.).

4

In the immigration context "an unlawful arrest does not automatically result in suppression of evidence." *Gabriel v. Hermosillo*, No. 2:25-cv-02594-DGE-GJL, 2026 WL 194233, at *5 (W.D. Wash. Jan. 26, 2026); *see also INS v. Lopez-Mendoza*, 468 U.S. 1032, 1051 (1984) ("We hold that evidence derived from [an unlawful arrest] need not be suppressed in an [immigration] civil deportation proceeding."). The Sixth Circuit acknowledged that *Lopez-Mendoza* established that a defendant, including his identity or body, is properly before a court "regardless of whether this information was obtained in violation of his Fourth Amendment rights." *United States v. Navarro-Diaz*, 420 F.3d 581, 588 (6th Cir. 2005). Thus, "the 'body' or 'identity' of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Lopez-Mendoza*, 468 U.S. at 1039. Accordingly, the Court need not address the substantive issue of whether Defendant's Fourth Amendment rights were violated because even if they were, he is not entitled to habeas relief on that basis.

   2. *Fifth Amendment*

Petitioner next contends that his detention violates his Fifth Amendment Due Process rights. (Doc. # 1 ¶ 33). Specifically, Petitioner states that he was "detained significant time without a court date" and then subsequently denied bond "on the basis that the Court lacked jurisdiction." (Doc. # 8 at 6). Because Petitioner does not dispute that he is being properly held under § 1225, "the question before the Court is whether Respondent['s] interpretation and application of § 1225(b)(2) has deprived [Petitioner] of his due process rights under the Fifth Amendment." *Azalyar v. Raycraft*, No. 1:25-cv-916, 2026 WL 30741, at *3 (S.D. Ohio Jan. 2, 2026). For reasons set forth below, the Court

concludes that "'[n]on-punitive detention in the immigration context violates the Due Process Clause,' [] absent 'adequate procedural protections' or a 'special justification' outweighing a petitioner's liberty interest." *Azalyar*, 2026 WL 30741, at *3 (quoting *Padilla v. United States Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2003) and *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

The Fifth Amendment states, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))). To determine whether a detainee's due process rights have been violated, courts within the Sixth Circuit apply a three-part balancing test:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

### a. Private interest

As to the first factor, Petitioner has a cognizable private interest in avoiding detention without an opportunity for a bond hearing. *See Hamdi*, 542 U.S. at 531 (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]"). Indeed, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the

Due Process Clause[.]" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."). Our immigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings. *See Yamataya v. Fisher*, 189 U.S. 86, 101 (1903). Further, the Supreme Court has previously required individualized hearings for deprivations of interests less fundamental than Petitioner's interest in freedom from detention. *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of welfare benefits).

Respondents are firm in their position that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2), yet they "fail to contend with the liberty interests created" when the United States paroled Petitioner in 2023. *Azalyar*, 2026 WL 30741, at *4. Petitioner has spent the past three years at liberty in the United States, and therefore "possesses a *significant* private interest in his freedom from detention." *Id*. (emphasis in original); *see also Singh v. Andrews*, No. 1:25-cv-801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (holding that the petitioner had a substantial private interest in remaining free from detention because he had been "out of custody for nearly a year-and-a-half, and during that time, ha[d] lawfully worked full-time, and regularly volunteer[ed] at his temple."). This Court agrees with numerous other district courts "in finding that individuals paroled from civil immigration custody have a protectable liberty interest in remaining so." *Azalyar*, 2026 WL 30741, at *4.

### b. Erroneous deprivation

The second *Mathews* factor requires the Court to consider "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Hernandez-Fernandez v. Lyons*, No. 5:25-cv-773, 2025 WL 2976923, at *9 (W.D. Tex. Oct. 21, 2025) (quoting *Martinez v. Sec. of Noem*, No. 5:25-cv-01007-JKP, 2025 WL 2598379, at *3 (W.D. Tex. Sept. 8, 2025)). Respondent argues that because "there is no indication that [Petitioner] is not being properly detained as an applicant for admission, the risk that he is inappropriately being deprived of his freedom during this limited period of time is not significant." (Doc. # 5 at 7).

The Court, along with the Petitioner himself, agrees that he is being properly detained under § 1225(b)(2). Regardless, his detention "must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Azalyar*, 2026 WL 30741, at *5 (quoting *Valencia Zapata v. Kaiser*, No. 25-cv-07492, 2025 WL 2578207, at *9-10 (N.D. Cal. Sept. 5, 2025)). The United States previously determined that Petitioner did not pose a threat, paroling him into the United States under 8 U.S.C. § 1182(d)(5)(A), which allows for DHS to parole a noncitizen into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit ...." (*See* Doc. # 5-1 at 1). Because Respondent has "'communicated no basis under those statutory purposes' for re-detaining him now, there is a high risk that [Petitioner] has been and will continue to be erroneously deprived of his liberty." *Azalyar*, 2026 WL 30741 at *5 (quoting *Zapata*, 2025 WL 2578207, at *10).

8

Although Petitioner previously appeared before an IJ for a custody redetermination hearing on October 27, 2025, the IJ denied the redetermination on jurisdictional grounds. (Doc. # 5-2 at 2).  Thus, Petitioner was not afforded a constitutionally adequate custody redetermination hearing at that time.  Therefore, to counter the current risk of erroneous deprivation, a *constitutionally proper* custody redetermination hearing is appropriate.  *See Azalyar*, 2026 WL 30741 at *5 ("Respondents must provide a custody redetermination hearing at which the government bears the burden of justifying Azalyar's continued detention[.]"); *Hernandez-Fernandez*, 2025 WL 2976923, at *9 ("[T]he risk of erroneous deprivation is high if Hernandez is not afforded a detention hearing"); *Edahi v. Lewis*, No. 4:25-cv-126-RGJ, 2025 WL 3466682, at *14 (W.D. Ky. Nov. 27, 2025) (holding that detention "without any individualized assessment, establishes a 'high risk of erroneous deprivation' of a protected liberty interest." (quoting *Munoz Materano v. Arteta*, No. 25 Civ. 6137, 2025 WL 2630826, at *15 (S.D.N. Y. Sept. 12, 2025))).

### c. Government interest

Finally, the Court must weigh the government's interest.  Respondent contends that the United States' interest is significantly higher than Petitioner's own interest in not being detained.  (Doc. # 5 at 6).  The Court disagrees.  Of course, the Court recognizes that the government "has legitimate interests in ensuring that noncitizens appear for removal hearings and do not pose a danger to the community." *Azalyar*, 2026 WL 30741, at *5 (citing *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017)).  However, a proper custody redetermination will allow the government to plead its case.  Once a constitutionally adequate custody redetermination hearing takes place, the government is free to argue its position on why Petitioner should not be granted bond—such an

opportunity ensures that there is no risk of impeding on the government's interest. Accordingly, "the government's interest in protecting the public of avoiding additional administrative burdens do not outweigh the countervailing liberty interest at stake," *Padilla*, 704 F. Supp. 3d. at 1174, "especially when an established mechanism exists to vindicate due process." *Azalyar*, 2026 WL 30741, at *5.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's continued detention without a custody redetermination hearing is unlawful and a violation of his Fifth Amendment rights. Accordingly, **IT IS ORDERED** as follows:

(1) Petitioner's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2) Petitioner's Unopposed Motion to Accept Tardy Filing (Doc. # 7) is **GRANTED**;

(3) Respondents are **ORDERED** to **immediately release** Petitioner, or in the alternative, provide him with a **bond hearing before an IJ within seven (7) days of the date of this order**; and

(4) Respondents shall file a Status Report with this Court **on or before February 9, 2025**, to certify compliance with this Order. The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 30th day of January, 2026.



Signed By:
David L. Bunning
Chief United States District Judge